UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

In Re:
ALMAN ANDREW BECKFORD,
    Appellant,

v.

BAYVIEW LOAN SERVICING, LLC,
    Appellee.

No. 14-cv-249 (VAB)

## OPINION AND ORDER

Alman Andrew Beckford ("Appellant") brings this appeal, *pro se*, of the January 16, 2014 decision of the United States Bankruptcy Court for the District of Connecticut (Dabrowski, J.) ("Bankruptcy Court") to deny Mr. Beckford's motion for reconsideration regarding the Bankruptcy Court's decision to dismiss Mr. Beckford's adversary proceeding against Bayview Loan Servicing, LLC ("Bayview" or "Appellant") and John and Jane Does (1-50). Mr. Beckford initiated the adversary proceeding on June 27, 2013 in the Chapter Seven bankruptcy case that he had commenced in the Bankruptcy Court. On January 9, 2014, the Bankruptcy Court granted Bayview's motion to dismiss Mr. Beckford's adversary proceeding. On January 15, 2014, Mr. Beckford filed a motion for reconsideration. On January 16, 2014, the Bankruptcy Court denied Mr. Beckford's motion for reconsideration. This appeal followed, with a Notice of Appeal entered on this Court's docket on February 27, 2014. ECF No. 1.

For the reasons that follow, the Bankruptcy Court's decision is **AFFIRMED**. The Bankruptcy Court properly dismissed Mr. Beckford's adversary proceeding and Amended Complaint, because Mr. Beckford had no standing to bring the claims alleged in the Amended Complaint.

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Procedural Background

On June 27, 2013, Mr. Beckford filed a Complaint against Bayview and John and Jane Does (1-50) in the Bankruptcy Court, which appeared to allege that, by securitizing Mr. Beckford's mortgage, Bayview and various other parties that Mr. Beckford did not specifically name had committed fraud and that Bayview had never perfected the mortgage and could not, therefore, sue for foreclosure. *See generally* Compl., *Beckford v. Bayview Loan Servicing, LLC et al.*, Adversary Proceeding No. 13-2022 (Bankr. D. Conn. June 27, 2013), ECF No. 1. On August 30, 2013, Bayview filed a motion to dismiss.

On September 26, 2013, following a hearing, the Bankruptcy Court denied Bayview's motion to dismiss without prejudice and ordered Mr. Beckford to correct the deficiencies in his Complaint by filing an Amended Complaint by November 8, 2013. *See* Order Denying Mot. to Dismiss, *Beckford v. Bayview Loan Servicing, LLC et al.*, Adversary Proceeding No. 13-2022 (Bankr. D. Conn. Sept. 26, 2013), ECF No. 35 (noting that the Complaint "does not comply with the pleading requisites of Fed. R. Civ. P. 8 . . . does not adequately apprise the Defendant of the statutory basis for its claims of relief, does not afford the Defendant an adequate opportunity to prepare an answer or reasonable response [under Fed. R. Civ. P. 12(e)] . . . [and] where alleging fraud, does not do so with requisite particularity" under Fed. R. Civ. P. 9(b)).

On November 7, 2013, Mr. Beckford filed an Amended Complaint. Amend. Compl., *Beckford v. Bayview Loan Servicing, LLC et al.*, Adversary Proceeding No. 13-2022 (Bankr. D. Conn. Nov. 7, 2013), ECF No. 37. On December 6, 2013, Bayview filed its motion to dismiss the Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) for lack of standing and 12(b)(6) for failure to state a claim. *See* Mot. to Dismiss, *Beckford v. Bayview Loan*

*Servicing, LLC et al.*, Adversary Proceeding No. 13-2022 (Bankr. D. Conn. Dec. 9, 2013), ECF No. 42. On January 9, 2014, the Bankruptcy Court held a hearing regarding the motion to dismiss. *See generally* Hearing Trans., Appellee's Br. Ex. A, ECF No. 12-1. The Bankruptcy Court dismissed Mr. Beckford's Amended Complaint and explained the grounds for the dismissal during the hearing. *See* Order Dismiss. Adv. Proc., *Beckford v. Bayview Loan Servicing, LLC et al.*, Adversary Proceeding No. 13-2022 (Bankr. D. Conn. Jan. 9, 2014), ECF No. 53.

As the Bankruptcy Court stated during the hearing, it dismissed Mr. Beckford's Amended Complaint and adversary proceeding for several reasons.[1] First, the Bankruptcy Court found that the Amended Complaint "d[id] not contain a short plain statement of the factual basis for the relief requested" as to all of the alleged counts. Hearing Trans. 34:18-22; *see also* Fed. R. Civ. P. 8(a). Second, the Bankruptcy Court noted that Federal Rule of Civil Procedure 9(b) requires plaintiffs, even *pro se* plaintiffs like Mr. Beckford, to plead fraud with the "requisite particularity." Hearing Trans. 30:4-9. The Bankruptcy Court found that Mr. Beckford's Amended Complaint, like the original Complaint, "d[id] not state with particularity . . . all circumstances constituting fraud" as to Mr. Beckford's fraud claims. *Id.* 34:22-24. Third, the Bankruptcy Court found that "it appears beyond doubt that [Mr. Beckford] can prove no set of facts in support of his – his claim that would entitle" him to relief, finding it appropriate to

---

[1] The Bankruptcy Court also noted that it could dismiss Mr. Beckford's adversary proceeding for two additional reasons. First, the Bankruptcy Court noted that Mr. Beckford's Amended Complaint failed to comply with the Bankruptcy Court's earlier order denying Bayview's motion to dismiss without prejudice, which required Mr. Beckford's Amended Complaint to set forth each count in "simple, concise, and direct language," and that Mr. Beckford's failure to do so may cause the Bankruptcy Court to, "without further notice," "strike the Complaint" or "dismiss the Proceeding," Order Denying Mot. to Dismiss at 3-4, giving the Bankruptcy Court an independent reason to dismiss the Amended Complaint. Hearing Trans. 38:7-17 (finding that Mr. Beckford was in "defiance of a Court Order, which the Court believes to be deliberate, because no apparent attempt was made to comply with it"). Second, the Bankruptcy Court found that it was also "permitted to abstain from an adversary proceeding *sua sponte*" under 28 U.S.C. § 1334(c)(1). *Id.* 38:18-24.

dismiss Mr. Beckford's Amended Complaint on Rule 12(b)(6) grounds. *Id.* 36:10-14; *see also id.* 38:7-12 ("Thus, even if the Court were not prepared to dismiss this case, as requested, and to do so under Federal Rule Civil Procedure 12(b)(6), for failure to state a relief that can be granted."). Fourth, the Bankruptcy Court also noted that "although not part of this ruling and not necessary to the ruling," Bayview had also "made some valid arguments with regard to the lack of standing in – in this matter." *Id.* 39:11-18.

Mr. Beckford then appealed the Bankruptcy Court's order dismissing his adversary proceeding to this Court.

### B. Factual Allegations

Mr. Beckford's Amended Complaint alleges various claims based on the "securitization of [his mortgage]." Amend. Compl. ¶ 1.9. As his original Complaint indicated, his claims concern the alleged "assignment of [his] mortgage dated February 1, 2012 and recorded February 23, 2012." Compl. ¶ 10. His mortgage was, allegedly, originally "closed on April 14, 2003." *Id.* ¶ 15. His Amended Complaint seeks to challenge the validity of the alleged assignment and securitization of his mortgage, and requests "compensatory, consequential and other damages"; "declaratory relief as to what (if any) party, entity or individual . . . is the owner of the promissory note" for his mortgage; declaratory relief as to "whether the [mortgage] secures any obligation of Plaintiff"; and "a Mandatory Injunction requiring reconveyance of the subject property to the Plaintiff or, in the alternative a Final Judgment granting Plaintiff Quiet Title" in the home. Amend. Compl. ¶ 3.

Among many other allegations[2], Mr. Beckford's Amended Complaint alleges that, because of the securitization of his mortgage, which he alleges as involving "numerous insurance

---

[2] Mr. Beckford's original Complaint consisted of four single-spaced pages and 28 paragraphs. *See generally* Compl. The Bankruptcy Court then ordered him to file an amended complaint that stated a claim, that pled fraud with

4

products, credit default swaps, cross collateralization, over collaterization and pooling at multiple levels," Mr. Beckford alleges that Bayview "is neither the holder in due course of the note nor the owner of any rights under the [mortgage]." Amend. Compl. ¶ 29.2-29.3. Mr. Beckford further alleges that his mortgage "note was not negotiable because it was no longer an unconditional promise to pay by the original borrower" because "[t]he terms had changed, adding conditions to payment that were inherent in the 'securitization process.'" *Id.* ¶ 29.3.7.1.

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 158(a)(1), United States district courts have jurisdiction to hear appeals "from final judgments, orders, and decrees" from United States bankruptcy courts. 28 U.S.C. § 158(a)(1). "[I]n bankruptcy appeals, the district court reviews the bankruptcy court's factual findings for clear error and its conclusions of law de novo." *In re Charter Commc'ns, Inc.*, 691 F.3d 476, 482-83 (2d Cir. 2012), *cert. denied*, 133 S.Ct. 2021 (2013); *see also Papadopoulos v. Gazes*, No. 14-CIV-3713 (KPF), 2014 WL 3928940, at *4 (S.D.N.Y. Aug. 12, 2014) ("In general, a district court reviews a Bankruptcy Court's findings of fact for clear error and its conclusions of law de novo." (internal quotation marks omitted)).

Additionally, because Mr. Beckford prepared his adversary proceeding Complaint and Amended Complaint *pro se* and also proceeds with this appeal *pro se*, the Court construes his

---

particularity, and that complied with the requirements of Fed. R. Civ. P. 8, which include the requirement that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). As the Bankruptcy Court correctly noted, the Amended Complaint fails to meet this requirement, as it does not set forth Mr. Beckford's claims in a concise and clear manner and instead "sprays the record with every imaginable, conceivable wrongdoing that the Plaintiff – can create or come up with." Hearing Trans. 36:15-21. Indeed, the Amended Complaint consists of 23 single-spaced pages and 116 paragraphs, many of which have nearly a dozen subparts. *See generally* Amend. Compl. Many of the allegations are difficult to understand, i.e. the allegation that "by selling virtually worthless 'negotiable' paper at par or in the case of toxic waste paper, 2-5 times par, the enterprise plaintiff reaped profits in the hundreds of thousands of dollars on each such 'transaction.' For example, if the toxic waste paper would, under cover of Plaintiff's credit rating and identity, be sold at an investment return of 6% and the mortgage note carried a principal balance of $300,000, the enterprise Defendants sold the 'investment' certificates on that 'loan' for approximately $740,000 and thus received $440,000 in illegal, fraudulent and undisclosed 'profits' or 'fees' in a $300,000 mortgage transaction." *Id.* ¶ 29.3.8.3.

5

filings "liberally" and interprets them "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006); *see also Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994) (explaining that *pro se* litigants should be afforded "special solicitude" because they are not represented by counsel).

Despite the special solicitude that the Court must show Mr. Beckford out of consideration for his *pro se* status, his Amended Complaint must still meet the "pleading standards otherwise prescribed by the Federal rules of Civil Procedure." *Suares v. Verizon Commc'ns Inc.*, No. 11-CIV-5050 (LAP), 2012 WL 4571030, at *3 (S.D.N.Y. Sept. 29, 2012) (internal quotation marks omitted).[3]

## III. DISCUSSION

In dismissing Mr. Beckford's adversary proceeding, the Bankruptcy Court cited multiple reasons for the dismissal, including Mr. Beckford's lack of standing, his failure to plead fraud with particularity as required by Fed. R. Civ. P. 9(b), and the failure to state a claim under Fed. R. Civ. P. 12(b)(6). *See* Hearing Trans. 30:4-9, 34:22-24, 36:10-14, 38:7-12, 39:11-18. Because the issue of standing affects this Court's authority to exercise jurisdiction over this appeal, the Court addresses standing before the other potential grounds for affirming the Bankruptcy Court's decision. As federal courts are courts of limited jurisdiction, to the extent that Mr. Beckford

---

[3] Mr. Beckford has alleged, in both the underlying Bankruptcy Court proceeding and this appeal, that the Bankruptcy Court improperly held his pleading "to the standard of an attorney." Appellant's Br. at 18, ECF No. 10; *see also* Bankr. Hearing Trans. 26:17-22, Appellee's Br. Ex. A, ECF No. 12-1 ("And I am not an attorney, and case law doesn't require me to be a -- to measure up to the attorneys."). Contrary to Mr. Beckford's allegations, the Bankruptcy Court properly took his *pro se* status into consideration, noting that it was taking a "very lenient approach" to interpreting Mr. Beckford's Amended Complaint, but that the Amended Complaint was nonetheless subject to the pleading requirements set by the Federal Rules of Civil Procedure, which the Bankruptcy Court concluded the Amended Complaint did not meet. *See id.* 29:21-30:16 ("For example, with regard to the requisite particularity required by [Federal Rule of Civil Procedure] 9(b), the Court knows of no *pro se* exception to that rule."); *see also id.* 31:7-25 ("[A]s best I can, within the requirements for hearing argument from *pro ses*, I've tried to analyze your amended complaint and listen to your arguments in the most lenient way possible. Obviously, not to the extent that satisfies you, but I recognize you're -- a *pro se* litigant. . . . But I also -- there's a limit to how much leniency I can give to you, as a *pro se*. And in this case, I was as lenient as I could be and simply had no choice but to dismiss the case.").

does not have standing to bring the claims in his Amended Complaint, this Court has no authority to consider the "subsequent merits of" the claims. *McCrory v. Adm'r of Fed. Emergency Mgmt. Agency of U.S. Dep't of Homeland Sec.*, 600 F. App'x 807, 808 (2d Cir. 2015) ("As a threshold inquiry, a federal court must determine that the plaintiff has constitutional Article III standing prior to determining issues of statutory standing or the subsequent merits of the case.") (discussing case with *pro se* appellant) (summary order); *see also Warth v. Seldin*, 422 U.S. 490, 498 (1975) (explaining that constitutional standing "is the threshold question in every federal case, determining the power of the court to entertain the suit").

On appeal, Bayview argues that Mr. Beckford lacked standing to bring the claims raised in his Amended Complaint. *See* Bayview Br. at 26-31, ECF No. 12. Bayview argues that it was appropriate for the Bankruptcy Court to dismiss Mr. Beckford's Amended Complaint under Fed. R. Civ. P. 12(b)(1) "for lack of subject-matter jurisdiction" because Mr. Beckford lacked standing. Fed. R. Civ. P. 12(b)(1); *see also All. For Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 89 n. 6 (2d Cir. 2006) ("Although we have noted that standing challenges have sometimes been brought under Rule 12(b)(6), as well as Rule 12(b)(1), the proper procedural route is a motion under Rule 12(b)(1) . . . Although lack of Article III standing and subject matter jurisdiction are distinct concepts, Article III standing remains, as we have noted, a limitation on the authority of a federal court to exercise jurisdiction." (internal quotation marks omitted)).

"A district court properly dismisses an action . . . for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it, such as when . . . the plaintiff lacks constitutional standing to bring the action." *Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.A.R.L.*, 790 F.3d 411, 416-17 (2d Cir. 2015) (internal quotation

marks omitted). A plaintiff "bears the burden of alleging facts that affirmatively and plausibly suggest that [he] has standing to sue," and "[i]n assessing the plaintiff's assertion of standing," a court should "accept as true all material allegations of the complaint and construe the complaint in favor of" the plaintiff, and may also "rely on evidence outside the complaint." *Id.* at 417 (internal quotation marks omitted).

### A. Standing and the Pre-Petition Claims

Under 11 U.S.C. § 541(a), "[t]he commencement of a [bankruptcy proceeding] creates an estate," which is "comprised of all the following property, wherever located and by whomever held," including "all legal or equitable interests of the debtor in property as of the commencement" of the bankruptcy proceeding, subject to certain exceptions that are not relevant here. 11 U.S.C. § 541(a). "Every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of [11 U.S.C. § 541]," including "[c]ontractual rights" and any "causes of action owned by the debtor or arising from property of the estate." *Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008) (internal quotation marks omitted); *see also Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 484 (2d Cir. 2014) ("It is a given, of course, that under provisions generally applicable to all bankruptcy cases, the commencement of the proceeding creates a bankruptcy estate. Such estate encompasses . . . with few exceptions, all legal or equitable interests of the debtor in property as of the commencement of the case. And it is established that such interests include causes of action possessed by the debtor at the time of filing." (internal quotation marks omitted)); *Seward v. Devine*, 888 F.2d 957, 963 (2d Cir. 1989) ("The bankruptcy estate encompasses all legal or equitable interests of the debtor in property as of the commencement of the case, including any causes of action possessed by the debtor." (internal quotation marks omitted)).

8

To the extent that a plaintiff's claims belong to his or her Chapter Seven bankruptcy estate, the party will no longer have standing to bring those claims. *See Olick v. Parker & Parsley Petroleum Co.*, 145 F.3d 513, 515 (2d Cir. 1998) ("Although this Court has not previously ruled on the issue, we conclude that a Chapter 13 debtor, unlike a Chapter 7 debtor, has standing to litigate causes of action that are not part of a case under [the Bankruptcy Code]."); *Seward*, 888 F.2d at 962 (considering "whether the Sewards had standing to bring any of the claims they assert" in light of certain claims being part of the bankruptcy estate); *see also Goldson v. Kral, Clerkin, Redmond, Ryan, Perry & Van Etten, LLP*, No. 13-CV-2747 (GBD) (FM), 2014 WL 4061157, at *4 (S.D.N.Y. July 11, 2014), *adopted*, 2014 WL 3974584 (S.D.N.Y. Aug. 13, 2014) ("If Goldson had filed for bankruptcy under Chapter 7, she would lack standing to pursue any claim that was part of her bankruptcy estate."). "Chapter 7 debtors may have standing to pursue claims that have been abandoned by the trustee, but do not have standing to pursue claims that remain part of the bankruptcy estate." *Goldson*, 2014 WL 4061157 at *4.

Because Mr. Beckford's Amended Complaint is entirely based on claims that arose prior to his petition for bankruptcy, which was filed on April 19, 2013, all of his claims belong to his bankruptcy estate and he does not have standing to bring any of those claims. His original Complaint stated that it was directed against the "assignment of the mortgage dated February 1, 2012 and recorded February 23, 2012," Compl. ¶ 9, with regards to a mortgage that "was closed on April 14, 2003. *Id.* ¶ 15. Although his Amended Complaint omits reference to the dates, it is clear that the Amended Complaint still arises from the same facts as his original Complaint, as the Amended Complaint still concerns the "securitization of [his mortgage]." Amend. Compl. ¶ 1.9. Because all claims in Mr. Beckford's Amended Complaint arose prior to his bankruptcy petition, they, like "all legal or equitable interests of the debtor in property as of the

9

commencement of the case," belong to his bankruptcy estate. *Crawford*, 758 F.3d at 484 (internal quotation marks omitted). "Chapter 7 debtors," such as Mr. Beckford, "do not have standing to pursue claims that remain part of the bankruptcy estate." *Goldson*, 2014 WL 4061157 at *4. The Court therefore finds that the Bankruptcy Court properly dismissed Mr. Beckford's Amended Complaint for lack of standing.

As Mr. Beckford did not disclose the claims in his Amended Complaint when petitioning for bankruptcy, the claims will remain the property of his bankruptcy estate even when his bankruptcy case closes. Mr. Beckford had not listed these causes of action alleged in his Amended Complaint in the asset schedules that he submitted with his Voluntary Petition in Bankruptcy Petition ("Bankruptcy Petition"). *See generally* Petition, *In Re: Beckford*, Bankruptcy Petition No. 13-20749 (Bankr. D. Conn. Apr. 19, 2013), ECF No. 2. Schedule B of the Bankruptcy Petition required Mr. Beckford to list various types of "personal property" including, under Item 19, "equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor," or, under Item 21, "[o]ther contingent and unliquidated claims of every nature." *Id.* at 12-13.

To the extent that "a claim had been properly disclosed in bankruptcy," and was "properly disclosed and scheduled, but remains unadministered at the close of the bankruptcy case, it is deemed abandoned by the trustee and returns to the debtor." *Goldson*, 2014 WL 4061157 at *4. If a claim was undisclosed or unscheduled, however, it "automatically remains property of the estate after the case is closed." *Id.* (internal quotation marks omitted). Because Mr. Beckford had not disclosed the claims in his Amended Complaint in his Bankruptcy Petition, the claims therefore will remain the property of the bankruptcy estate, even when his bankruptcy case is closed, though at present, his bankruptcy case remains open.

### B. Standing and the Claims Arising from Alleged Pooling and Servicing Agreement

Furthermore, even if Mr. Beckford had not filed for bankruptcy and his claims did not therefore belong to his bankruptcy estate, he also would not have had Article III or prudential standing to bring the claims alleged in his Amended Complaint before this Court in the first instance. The Second Circuit has held that mortgage borrowers attempting to challenge the assignment of their mortgages in connection with the securitization of those mortgages do not have Article III or prudential standing to bring such claims. *See Rajamin v. Deutsche Bank Nat. Trust Co.*, 757 F.3d 79, 86 (2d Cir. 2014) ("We conclude that plaintiffs failed to allege injuries sufficient to show constitutional standing to pursue their claims. . . . Plaintiffs have advanced several theories for prudential standing. Each fails.").[4]

In *Rajamin*, the plaintiffs were a group of borrowers who had taken out home loans that were "equivalent to a mortgage under California law." *Rajamin*, 757 F.3d at 81 (internal quotation marks omitted). Plaintiffs' mortgages were then securitized, i.e. the original "mortgage lender [sold] pools of mortgages into trusts created to receive the stream of interest and principal payments from the mortgage borrowers." *BlackRock Fin. Mgmt. Inc. v. Segregated Account of Ambac Assur. Corp.*, 673 F.3d 169, 173 (2d Cir. 2012) (discussing typical mortgage-

---

[4] Because the Court affirms the Bankruptcy Court's decision on standing, finding that all of Mr. Beckford's claims in the Amended Complaint belong to his bankruptcy estate and that he would not have Article III or prudential standing regardless of the bankruptcy, the Court need not reach the "subsequent merits" of the claims. *McCrory*, 600 F. App'x at 808. To the extent that Mr. Beckford may argue that some of his claims, particularly those for alleged fraud that allegedly induced him to enter into his mortgage, are not like those discussed in the *Rajamin* line of cases, the Court notes that the Amended Complaint also fails to plead fraud with the required particularity under Fed. R. Civ. P. 9(b), which provides an additional grounds to affirm the Bankruptcy Court's decision. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud . . . a party must state with particularity the circumstances constituting fraud."); *see also ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007) (noting that a plaintiff pleading fraud must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent"). "Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants'," as a general group. *Springer v. U.S. Bank Nat'l Ass'n*, No. 15-CV-1107 (JGK), 2015 WL 9462083, at *10 (S.D.N.Y. Dec. 23, 2015) (discussing case with *pro se* plaintiff concerning securitization of mortgage on which plaintiff defaulted). The Amended Complaint does not meet these requirements.

11

securitization trust). "The terms of the securitization trusts as well as the rights, duties, and obligations of the trustee, seller, and servicer [were] set forth in a Pooling and Servicing Agreement ('PSA')." *Id.* The *Rajamin* defendants were financial institutions that claimed to be the new owners of plaintiffs' mortgages because they had purchased the mortgages from the original lender. *See Rajamin*, 757 F.3d at 82.

The *Rajamin* plaintiffs "challenged defendants' (a) ownership of plaintiffs' loans and mortgages, (b) right to collect and receive payment on the loans, and (c) right to commence or authorize the commencement of foreclosure proceedings where payments have not been made or received," based on the alleged invalidity of the assignment of the mortgages due to "lack of compliance with the provisions of the assignment agreements," to which plaintiffs were not a party. *Rajamin*, 757 F.3d at 82. The Second Circuit found that plaintiffs' "challenge to defendants' claim of ownership of plaintiffs' loans, implying that the loans are owned by some other entity" to be "highly implausible" as no "billing or other collection efforts" by the purported true owner of the mortgages had ever occurred. *Id.* at 85. There had also been no "allegation of any threat or institution of foreclosure proceedings" by any entity other than defendants. *Id.* Thus, the Second Circuit concluded that plaintiffs' alleged injuries were too "conjectural or hypothetical" to show "constitutional standing to pursue their claims." *Id.* at 85-86. Furthermore, to the extent that plaintiffs' challenges to the validity of the assignment of their mortgages was based on alleged incompliance with the assignment agreements, to which plaintiffs were not a party, the Second Circuit also found that plaintiffs lacked "prudential standing." *Id.* at 86.

Following *Rajamin*, "[t]he authority of this Circuit . . . dictate[s] that a plaintiff generally does not suffer an injury by virtue of an assignment of his mortgage, even if that assignment was

12

invalid or unlawful." *Houck v. U.S. Bank, N.A. for Citigroup Mortg. Loan Trust 2007-AR5*, No. 16-3660-CV, 2017 WL 1735252, at *2 (2d Cir. May 3, 2017) (summary order). The Second Circuit has "reasoned that, regardless of whether a mortgage was validly assigned, the mortgagor is still obligated to repay someone, whether it be the original lender or the entity to which the mortgage was assigned." *Id.*

Like the plaintiffs in *Rajamin* and the cases following it, Mr. Beckford's Amended Complaint alleges "highly implausible" and "entirely hypothetical" injuries, for instance that the "improper transfer of h[is] debt prevented h[im] from exploring options with the true debt owner," which are too speculative "to serve as a basis for Article III standing." *McCarty v. The Bank of N.Y. Mellon*, 669 F. App'x 6, 7 (2d Cir. 2016) (internal quotation marks omitted); *see* Amend. Compl. ¶ 23 (alleging that "[i]t is doubtful that any of the defendants have any knowledge or have made any effort to determine whether the putative holders in due course [of Mr. Beckford's mortgage] have been paid in whole or in part"). Like the plaintiffs in *Rajamin* and *McCarty*, Mr. Beckford's claims all arise from the allegation that the identity of the true owner of his mortgage is unknown and that Bayview "is neither the holder in due course of the [mortgage] note nor the owner of any rights under the [mortgage]." *Amend. Compl.* ¶ 29.3.

Furthermore, Mr. Beckford's Amended Complaint is based in large part on "theories [that] are largely premised on injuries to third parties, such as intended beneficiaries of the Trust" to which the plaintiff's mortgage was transferred, thus he also lacks prudential standing, as he may not "assert[] the rights or legal interests of other in order to obtain relief from injury to [himself]." *Obal v. Deutsche Bank Nat'l Trust Co.*, 670 F. App'x 10, 12 (2d Cir. 2016); *McCarty*, 669 F.App'x at 7; *see* Amend Compl. ¶ 2 (alleging that "the participants in the securitization scheme described herein have devised business plans to reap millions of dollars in

13

profits at the expense of Plaintiff and other investors in certain trust funds"). Mr. Beckford's Amended Complaint alleges various misdeeds associated with his mortgage, including that his "property was appraised improperly, never verified despite 'stringent' underwriting standards . . . with which the Defendants purported to comply (and did not)." Amend. Compl. 11. This is an allegation that Defendant "did not perform all of their obligations under the PSAs" of the mortgage securitization trust, but Mr. Beckford, as the mortgage borrower, was not a party "to the assignment agreements," nor was he an intended beneficiary of the assignment of his mortgage, as his only relationship to the PSA was that his "financial obligations were being bought and sold." *Rajamin*, 757 F.3d at 87. Mr. Beckford therefore lacks prudential "standing to enforce the agreements to which" he is not a party, nor an intended beneficiary. *Id.*

## IV. CONCLUSION

For the foregoing reasons, the Bankruptcy Court's dismissal of Mr. Beckford's adversary proceeding is **AFFIRMED** and this appeal is dismissed.

The Clerk of the Court is directed to close this case.

SO ORDERED at Bridgeport, Connecticut, this 14th day of June, 2017.

                                                  /s/ Victor A. Bolden
                                                  Victor A. Bolden
                                                  United States District Judge